THE CLEVELAND ELECTRIC ILLUMINATING CO., APPELLANT, *v.*
PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.
OHIO CITIZENS' COUNCIL, APPELLANT, *v.*
PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Cleveland Electric Illuminating Co. v.
Pub. Util. Comm. (1982), 69 Ohio St. 2d 258.]

(Nos. 81-450 and 81-467—Decided February 17, 1982.)

*Messrs. Squire, Sanders & Dempsey, Mr. Alan P. Buchmann* and *Mr. Arthur E. Korkosz,* for appellant The Cleveland Electric Illuminating Co.

*Messrs. Thompson, Hine & Flory, Mr. William D. Ginn* and *Mr. Thomas D. Corrigan,* for appellant Ohio Citizens' Council.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik,* for appellee, Public Utilities Commission of Ohio.

*Mr. Thomas E. Wagner,* director of law, and *Mr. Craig A. Glazer,* for intervening appellee, city of Cleveland.

CELEBREZZE, C. J.   The commission's Order on Rehearing, which disallowed charitable contributions, was based on the "belief that the court in the *Cleveland* case, *supra,* had determined as a matter of law that a company's charitable donations were not a 'cost to the utility of rendering the public utility service' within the meaning of that phrase as employed in Section 4909.15(A)(4) Revised Code."

Appellants and the *amici* argue that the utilities have a right to present evidence to the commission on the question of whether charitable contributions provide a direct, primary benefit to their customers. Furthermore, they contend that the language of the syllabus in *Cleveland, supra,* supports this position and that the commission incorrectly interpreted the law in that case.

Pursuant to R. C. 4903.13, this court shall reverse, vacate or modify an order made by the commission if the order is unlawful or unreasonable. We are mindful of the scope of our review pursuant to this section. See, *e.g., Consumers' Counsel* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 108, 110. Thus, we must determine whether the commission's order, which proscribed the inclusion of charitable contributions in ratemaking, as a matter of law, was unreasonable or unlawful.

Each party argues that our decision in *Cleveland, supra,* supports its respective position. In that case, the commission granted CEI a rate increase. However, we concluded that charitable contributions and certain types of advertising can not be allowed as operating expenses. The syllabus states that:

"Unless a utility can demonstrate that its institutional and promotional advertising expenditures and its charitable contributions provide a direct, primary benefit to its customers, such expense items are not allowable as operating expenses for rate-making purposes."

When we previously considered charitable contributions, we stated that "this court finds that this item also cannot be sustained as a proper operating expense." *Id.* at page 73.

Thus, we held that charitable contributions cannot be included as an operating expense and passed on to customers.

We specifically acknowledged that this holding deviated from the prior decision in *Cincinnati v. Pub. Util. Comm.* (1978), 55 Ohio St. 2d 168. Furthermore, we stated that we were persuaded by Justice Locher's dissent in that case that "such contributions are not a cost of rendering the public utility service." *Cleveland, supra,* at page 73.

In *Cleveland* and in this appeal, similar arguments were made in favor of allowing charitable contributions as an operating expense. The situation has not changed since that decision on July 9, 1980. After considering those arguments, we concluded that utility contributions become an involuntary levy upon ratepayers. *Id.* at page 73. This concept was aptly expressed in *Pacific Tel. & Tel. Co. v. Public Util. Comm.* (1965), 62 Cal. 2d 634, 668, 401 P. 2d 353, as follows: " * * * contributions if included as an expense for ratemaking purposes, become an involuntary levy on ratepayers, who, because of the monopolistic nature of utility service, are unable to obtain service from another source and thereby avoid such a levy. * * * "

The decision to make charitable contributions, in terms of amounts and the recipients, is a matter of personal choice.[6] When the utility makes this decision, the ratepayer has no choice. " ' [R]atepayers should not be made involuntary donors to charitable and educational institutions through the payment of electric rates.' " *Cincinnati, supra,* at page 180, Locher, J., dissenting, quoting *Re Virginia Electric & Power Co.* (1975), 11 P.U.R. 4th 115, 124.

Charitable contributions assessed against the ratepayer as an operating expense disproportionately benefit the utility and its owners, not the ratepayers. In *Cleveland, supra,* at page 74, we noted that " '[w]hile it is true that such contributions to local service areas do benefit the communities served, they also tend to upgrade the company's public image and therefore work more to the benefit of the utility and its shareholders than to the benefit of the subscribers. Such an undertaking

---

[6] The actual dollar amount attributable to each ratepayer is not significant. Although it may not be large, no amount is allowed under the existing statutory framework.

should be financed by the ownership rather than the utility customers * * * .' " (Quoting *Re Chesapeake & Potomac Tel. Co. of W. Va.* [W. Va. 1977], 22 P.U.R. 4th 197, 205.)

We have previously considered the question of the treatment of charitable contributions as an operating expense for ratemaking purposes and find no change in circumstances. As stated in *Cleveland, supra,* we are cognizant of the laudable purposes served by such contributions and we hope that utilities will continue to make donations of their own.[7] However, charitable contributions, as a category of expenditures, are not a cost of rendering the public utility service within the meaning of R. C. 4909.15(A)(4). Allowing such contributions as an expense would disadvantage ratepayers by forcing them to pay for the contributions. Our conclusion is based upon the existing statute. Therefore, it is the responsibility of the General Assembly, if it desires a change, to provide specific legislation for allowing charitable contributions to be included in the cost of service.

We hold that the commission correctly interpreted our decision in *Cleveland, supra.* Because charitable contributions are not an operating expense, the commission's Order on Rehearing is not unlawful or unreasonable. For these reasons, the order of the commission is affirmed.

*Order affirmed.*

W. BROWN, SWEENEY, LOCHER and C. BROWN, JJ., concur.

HOLMES, J., concurs in the syllabus and judgment on the basis of *Cleveland* v. *Pub. Util. Comm.* (1980), 63 Ohio St. 2d 62.

KRUPANSKY, J., after oral argument recused herself.

---

[7] Although not allowed herein as an operating expense, utilities receive favorable treatment under federal tax laws for their charitable contributions.